PECK v. LOUX et al. (No. 7451.)

(Court of Civil Appeals of Texas. Dallas. April 8, 1916. Rehearing Denied May 13, 1916.)

1. PRINCIPAL AND AGENT ⚖➡123(10)—POWER OF AGENT — COMPROMISE OF DEBTS — EVIDENCE.

Where the defense to suit upon a note and to foreclose a land lien securing it was that the agent of plaintiff had accepted a conveyance of the land in payment of the debt, evidence *held* insufficient to show that the agent had the authority to accept such conveyance as payment, where no similar transaction or authority in his dealing with the principal over a period of years was shown.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 429; Dec. Dig. ⚖➡123(10).]

2. EVIDENCE ⚖➡317(7) — HEARSAY — STATEMENTS OF AGENT.

Where there is no proof of agent's authority to accept a conveyance of land securing a debt in payment of the debt, testimony of one to whom the agent conveyed such land that the agent, who had since died, stated that the land had been taken in payment of the debt, is inadmissible as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1180; Dec. Dig. ⚖➡317(7).]

3. EVIDENCE ⚖➡317(7)—HEARSAY—TRANSACTIONS WITH AGENT.

Where there is no proof of agent's authority to accept a conveyance of land securing a debt in payment of the debt, testimony of the debtor of a conversation with the agent, who has since died, in which they agreed to have the debt paid by conveyance of the land, is inadmissible as hearsay.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1180; Dec. Dig. ⚖➡317(7).]

Appeal from District Court, Grayson County; W. M. Peck, Judge.

Action by Abbie E. Peck against G. T. Loux and others. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

McReynolds & Hay, of Sherman, for appellant. Brame & Brame and Jones & Hassell, all of Sherman, for appellees.

TALBOT, J. Mrs. Abbie E. Peck, the appellant, instituted this suit on December 10, 1912, against the appellees, G. T. Loux and wife, Helen E. Loux, and J. B. Savage, on a promissory note for $1,100, dated July 5, 1905, signed by G. T. Loux and Helen E. Loux, payable to the order of A. B. McKean five years after date, bearing interest at maturity at 8 per cent. per annum, and providing for 10 per cent. on the amount as attorney's fees in case of legal proceedings thereon; the same having been indorsed and transferred by A. B. McKean to appellant. The note was secured by deed of trust on real estate situated in Grayson county, Tex., which was executed by the appellees G. T. Loux and Helen E. Loux to J. D. Haizlip, trustee. Judgment was sought for the amount due on the note, including attorney's fees, against appellees G. T. Loux and Helen E. Loux, together with foreclosure of lien on the land as against all of the appellees; it being alleged that the property described in the deed of trust had subsequent to the execution and recording thereof been conveyed subject to said lien by G. T. and Helen E. Loux to J. D. Haizlip, and by J. D. Haizlip to the appellee J. B. Savage; that the note was wholly unsatisfied, and had been placed in the hands of attorneys, and suit instituted thereon after default. Appellees in their respective answers filed admitted the execution of the note and the deed of trust on the land as alleged by appellant, the transfer of the land by G. T. and Helen Loux to J. D. Haizlip and by J. D. Haizlip to J. B. Savage, but denied liability on the note and appellant's right to recover thereon, alleging, in substance, that J. D. Haizlip had for a long time prior and subsequent to the execution of the note and deed of trust acted as the general

agent of appellant in Grayson couny, Tex., having authority to act for appellant as her agent in lending money on real estate security and collecting the same; that the land described in the deed of trust had been conveyed to J. D. Haizlip, as agent and trustee for appellant or the holder of the note sued on, in consideration of the cancellation and discharge thereof, and without other consideration; that J. D. Haizlip had authority as general agent to bind appellant by his acts, or, if he had no such actual authority, the same was implied, and that appellant was estopped to deny the same, because she had for a long time publicly and notoriously held him out as having such authority, and appellees believed that he had such authority, and were thereby induced to deal with him as such agent; that Haizlip made demand on appellees Loux and wife for payment of the note, and they, at the solicitation of Haizlip, had conveyed to him the land in settlement and satisfaction of the note, at the time of the transaction receiving from Haizlip a receipt releasing them from further liability.

Appellee J. B. Savage further alleged that J. D. Haizlip represented to him that the note sued on had been paid, but a release had not been obtained and recorded on account of his negligence; that he would communicate with the holders of the note and secure a release; that, relying upon such representations, he purchased the property from Haizlip, paying a valuable consideration therefor, but demanded that said agreement with reference to the securing of release be incorporated in the deed, whereupon the statement was by Haizlip written in the deed, which appellee "supposed to be, and relying upon its being," a statement that the debt had been paid, and that a release would be secured.

Appellant by supplemental petitions expressly denied the authority of J. D. Haizlip to act as her agent, either general or special; denied that he had acted or was authorized to act as her agent in the transactions with appellees; denied that the land was conveyed by appellees Loux and wife to Haizlip, as trustee, agent, or representative of the holder of the note, or in satisfaction of same; and alleged that Haizlip, in purchasing the land, acted for himself alone, taking deed in his own name. Appellant further denied that Haizlip was clothed with authority, either real or apparent, to act as her agent or to collect said money, or to accept a conveyance of the land in settlement thereof; denied that she had ever held him out to the public as her agent as alleged by appellees, or that Haizlip had ever represented himself to have such authority or held himself out as her agent as alleged by appellees, or that appellees dealt with him under such belief. She further alleged that Haizlip, in fact, bought the land subject to the lien securing note sued on, and that Savage purchased from Haizlip subject to

said lien in full knowledge of its existence and recognition of its validity, relying on Haizlip's agreement to discharge the note and secure release of the lien, as recited in the deed to Savage. Appellees by supplemental answers denied all affirmative matters pleaded by appellant in her supplemental petitions.

The case was submitted to the jury on special issues, and upon the findings made judgment was rendered that appellant take nothing and that appellees recover their costs.

A. B. McKean, to whom the note was made payable, lived in the city of Troy, state of Pennsylvania, and the appellant, Mrs. Peck, also maintained her residence at said city, but lived a great deal of the time with her son-in-law at Lafayette, Ind. Mrs. Peck had been a widow since 1900, and her business in a large measure had been transacted by the said McKean. J. D. Haizlip, who is named as trustee in the deed of trust given by G. T. Loux and wife to secure the payment of the note sued on, in his lifetime lived at Sherman, in the state of Texas. A large part of his business was the loaning of money for the said A. B. McKean, and, through the said McKean, for Mrs. Peck. Prior to 1900, and during the lifetime of her husband, the said Haizlip had transacted such business for the husband of Mrs. Peck. At different times during the years intervening between 1900 and the death of the said Haizlip he (Haizlip) made loans for A. B. McKean, and, through the said A. B. McKean, for Mrs. Peck, and had received money at various times and remitted the same to A. B. McKean for Mrs. Peck from parties whose notes were held by Mrs. Peck when said notes were not in his possession. McKean testified, however, that Haizlip was not authorized by Mrs. Peck or by him to make such collections. The money loaned on the note in question was the property of appellant, Mrs. Peck, and the note was taken and made payable to the order of the said A. B. McKean by mistake, and by the said McKean assigned and transferred without recourse to Mrs. Peck. The deed of trust executed at the time of the execution of the $1,100 note sued on secured said note, and also five other notes for $88 each, said last-named notes maturing respectively one, two, three, four, and five years after date, and, according to the recitations in the deed of trust, appeared to be the annual interest of 8 per cent. on said $1,100 note for the years it was to run. All of these transactions were had with J. D. Haizlip. The money loaned, however, was furnished by the said A. B. McKean, and was the money of appellant, Mrs. Peck. On the 11th day of February, 1910, there was due and unpaid, principal and interest, on the note in controversy, $1,500, and the appellee G. T. Loux testified that on that date he and his wife deeded the land upon which the deed of trust was given to secure the payment

of said indebtedness to the said J. D. Haizlip for the sole consideration of the cancellation of said indebtedness. The consideration expressed in the deed of the said Loux and wife conveying said land to the said Haizlip, however, is $1,000, and said deed recites:

"This deed is made to said J. D. Haizlip subject to our indebtedness against said above-described land held by A. B. McKean, amounting at this date as shown by the mortgage records of Grayson county, Tex."

On May 25, 1910, the said J. D. Haizlip conveyed the said land to appellee J. B. Savage for an expressed consideration of $3,250, and Savage testified, in substance, on direct examination, that Haizlip told him that Loux's indebtedness had been paid and satisfied by Loux and wife deeding to him (Haizlip) the land upon which the said deed of trust was given, but that he (Haizlip) had negligently failed to get a release of said indebtedness and deed of trust lien; that the note was in the hands of McKean, and that he would within 90 days procure a release of the same; that he asked Haizlip to place in the deed that he was to secure a release in 90 days; that he believed the representations of Haizlip that the note had been paid, and first learned that it was claimed that it had not been paid when he received the citation served on him in this case. On cross-examination he testified, among other things, in substance, that Haizlip told him that Loux had fallen down in his payments, and that he (Haizlip) had bought the place from Loux to pay off the debt; that he (Haizlip) had agreed with Loux to pay the debt off; and that he had released Loux. He further said:

"I was not satisfied with that, and wanted it put in the face of the deed that Haizlip was to pay the note off and get a release. It was the understanding that he was to pay off this note and get a release within 90 days. It was at my request that Haizlip was to put in the deed that he was to get a release in 90 days. That Haizlip wrote in the deed, 'I am to pay off and discharge a mortgage held on the above land by A. B. McKean and procure a release of same in 90 days,' and until I read that I never had heard of Mrs. Abbie E. Peck. I did not know that she was holding this note."

The deed from Haizlip to Savage has the following recitation:

"I am to pay off and discharge a mortgage on the above land held by A. B. McKean and procure a release of same in 90 days."

The deed from Loux and wife to J. D. Haizlip was recorded in the deed records of Grayson county, Tex., on the 14th day of February, 1910, and the deed from Haizlip to J. B. Savage was so recorded the 1st day of June, 1910. According to the testimony of G. T. Loux, which seems to be uncontradicted, no demand was made on him for the payment of the note sued on or interest notes after February 11, 1910, the date of the Loux deed to Haizlip, until after the death of Haizlip. After Haizlip's death, and in July, 1912, A. P. McKean and W. S. Potter, attorney for Mrs. Peck, were in Sherman, Tex., and while there Mr. Brame, attorney for appellee Savage, presented a release of the note sued on and asked McKean to execute it. McKean looked over the release and asked Brame about the note, and Brame told him that he knew nothing about it; that he had never seen it, but had been informed that it had been paid. McKean said he thought he had the note among his papers somewhere and would talk the matter over with Mr. Potter; that the Haizlip estate had complicated their affairs a great deal, and he hoped to do something about the note before he left Sherman. Brame saw McKean a day or two after that conversation, but nothing was said or done about the release of the note, and the release was never executed. The correspondence between McKean and Haizlip with reference to their business matter and with reference to the matter in controversy was not preserved by McKean. According to the testimony offered in behalf of the appellant, J. D. Haizlip negotiated the loan and had the note and deed of trust involved in this suit executed and forwarded to A. B. McKean at Troy, Pa. When Haizlip had a loan that he desired to negotiate for any of his clients he would submit the same for McKean's consideration, and, if McKean had the money and considered the loan desirable, he would purchase the same. Such was their course of dealing in all the transactions that occurred between them. Haizlip was not authorized to act for appellant, Mrs. Peck, in the transaction involved in this suit or similar transactions, except as authorized by McKean. No business relations existed between appellant and J. D. Haizlip except through McKean. McKean made loans for her, collected interest and principal, and accounted to her from time to time. He had no power of attorney from her to make the loan here in question, but general authority to act as her agent. He had authority to collect money for appellant on notes or other obligations, but he had no authority to take deeds for land in payment of such obligations, and never had taken any. J. D. Haizlip had no authority from appellant, Mrs. Peck, or from McKean, to collect notes in money for appellant or to take a conveyance from Loux and wife for the land in payment of the note sued on, or to take a conveyance of land from any one in payment of any loan, and he never took such a conveyance for such purpose unless he did so from Loux and wife in settlement of the note sued on and the unpaid interest due thereon. When notes were due McKean sometimes sent them to Haizlip, who would collect in money and remit, but otherwise he had no authority to collect either in money or any other character of property. He had no authority whatever, written or oral, to take the deed from Loux or to release any lien held either by appellant or McKean, and neither the appellant nor McKean had any knowledge of the transaction between G. T. Loux and wife and J. D. Haizlip in which Loux and wife

executed to Haizlip a deed dated February 11, 1910, conveying the land described in the deed of trust given to secure the note sued on until after Haizlip's death and a short time before this suit was brought. Neither Haizlip nor Loux communicated with McKean or Mrs. Peck, the appellant, in any manner whatever about the transaction. The note sued on at the time of that transaction was in the possession of McKean or appellant, and had never been in the possession of Haizlip for collection, and he had no authority to collect it either in money or land.

The assignments of error need not be stated and discussed seriatim. The main contention of appellant is, in effect, that the judgment of the district court should be reversed because there was no evidence introduced showing that she, or A. B. McKean for her, had ever placed the note sued on in the hands of J. D. Haizlip for collection or conferred on him any authority, either actual or ostensible, to accept a conveyance of the land, described in the deed of trust given to secure the payment of said note, in payment or satisfaction of the same, or that said note had otherwise been paid off and discharged. On the other hand, the contention of the appellees is, in substance, that the said Haizlip had at least the implied power to cancel the note by accepting a conveyance of the said land, and also that by reason of the long agency of Haizlip, the manner in which he was permitted to deal with those for whom he had loaned money, appellees were warranted in dealing with him as one who had such power, and therefore appellant was estopped to deny such power. Appellees further contend that the circumstances of the case, as brought before the jury in the trial thereof, were sufficient to sustain the finding of the jury that appellant knew that the conveyance of the land had been made by Loux and wife to Haizlip, and are such as to sustain all the findings of the jury, which were in every respect favorable to appellees.

[1] We do not, after a very careful consideration of all the evidence, agree with the contentions of the appellees, but concur in the contention of the appellant to the effect that the evidence is insufficient to show that either she or A. B. McKean as her agent ever conferred on J. D. Haizlip authority, either actual or ostensible, to accept a conveyance of the land on which there was a lien to secure the payment of the note in question in payment of said note. Without such power being so conferred, he was not authorized to receive the conveyance from Loux and wife in payment of the note sued on. If it should be admitted that Haizlip was the agent of appellant and had authority to collect the note sued on in money when it became due, the evidence is not of such probative force as to justify the conclusion that he had either express or implied authority to accept a conveyance to himself of the land in settlement thereof. His authority to place

loans for appellant and McKean when directed so to do and to take notes evidencing such loans conferred no power to collect such notes, if at all, by taking a conveyance of land in payment of the same, and we are unable to see anything in the nature of Haizlip's agency or appellant's habits of dealing with him, as disclosed by the evidence, from which such power or authority could be implied. In all their dealings there had been no similar transaction, or, if so, it was not shown by the evidence. McAlpin v. Cassidy, 17 Tex. 450; Belton Compress Co. v. Belton Brick Mfg. Co., 64 Tex. 337; Western Brass Mfg. Co. v. Maverick, 4 Tex. Civ. App. 535, 23 S. W. 728. If the probative force of the testimony "be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony in legal contemplation falling short of being 'any evidence.'" Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059. No express authority being shown for J. D. Haizlip to receive a conveyance of the land in satisfaction of the note in suit, and no sufficient circumstances appearing from which authority could be implied, the findings of the jury upon all the questions submitted relating to that issue which were favorable to appellees, and necessary to form the basis of the judgment rendered, and which are attacked by appellant on this appeal, find no support in the evidence, and the acceptance of the conveyance by Haizlip was not binding on appellant, did not operate to discharge the note, and appellant's motion for a new trial should have been grantetd.

[2, 3] The court permitted the appellee Savage to testify, over the objections of the appellant, that J. D. Haizlip told him that G. T. Loux did not pay the interest on the note sued on as it fell due, and that he had sold the land to him in order to pay off said note and interest, and that it was through his (Haizlip's) negligence that a release of the note and lien on the land had not been obtained; that the note sued on had been paid by Loux deeding the property back. In view of the insufficiency of the evidence to show either express or implied authority on the part of J. D. Haizlip to accept a conveyance of the land in question in payment of the note sued on, we think this testimony was inadmissible. In the state of the evidence now before this court the testimony was hearsay, we think, and should have been excluded. The court also permitted the appellee G. T. Loux to testify, over the objection of appellant, that he got behind with the payments on the note sued on, and that he went to J. D. Haizlip and told him that he wanted to "deed the land over in payment of that note in full, which amounted to about $1,500," and that Haizlip agreed to accept the deed, and that he made it; that he paid off and settled the note that way. Appellant also complains of the admission of this testimony, and, for the reason given above

in holding that the testimony of Savage should not have been admitted, we think this testimony was not admissible. In the absence of authority on the part of Haizlip to receive a conveyance of the land in satisfaction of the note, the transaction between Loux and Haizlip, appellant not being present, and not being a party to the same, was a transaction between third parties, and the statements in relation thereto hearsay and inadmissible. Whether this testimony and the testimony of Savage which we have held to be incompetent shall become admissible upon another trial will depend upon the sufficiency of the testimony upon that trial to show that it was within the scope of Haizlip's authority as agent of appellant to receive in satisfaction of the note sued on the conveyance of the land from Loux.

What we have said practically disposes of all the material questions raised, or, if not, those not disposed of will not probably arise on another trial.

For the reasons indicated, the judgment of the court below is reversed, and the cause remanded.